UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re

Ag Pro Ltd.,                                              Chapter 7

                                                          Case No. 13-60851-6

                                    Debtor.
_____

### MOTION FOR AN ORDER GRANTING RELIEF FROM THE
### AUTOMATIC STAY NUNC PRO TUNC PURSUANT TO SECTION 362(D)

> HSBC Bank USA, National Association ("HSBC"), by its attorneys, Phillips
Lytle LLP, presents this motion ("Motion"), together with the Declaration of Rino Falsone dated
May 15, 2013 ("Declaration"), and the Declaration of Charles Anderson dated May 15, 2013
("Anderson Decl.") filed and served herewith, for an Order granting relief from the automatic
stay pursuant to 11 U.S.C. § 362(d) nunc pro tunc to the filing of the involuntary petition
permitting HSBC to exercise its rights and remedies as a secured creditor with respect to certain
property owned by the Debtor, and granting such other and further relief as is appropriate.  In
support of this Motion, HSBC respectfully represents:

### JURISDICTION AND VENUE

> 1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334(a).  Venue of
this case and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The subject matter
of this Motion is a "core proceeding" within the purview of, without limitation, 28 U.S.C.
§ 157(b)(2).  The statutory predicate for the relief sought by the Motion is Section 362 of the
Bankruptcy Code, as complemented by Rule 4001 of the Federal Rules of Bankruptcy
Procedure.

## FACTUAL BACKGROUND

2.      On May 15, 2013 ("Petition Date"), an involuntary bankruptcy petition was filed against Ag Pro Ltd. (the "Debtor") under Chapter 7of Bankruptcy Code by certain creditors (collectively, the "Petitioners").

3.      The Debtor is the owner of real property located at 24-28 Commerce Drive, Messina, New York ("Real Property"), which is the location of the Debtor's non-operating soybean processing facility.

A.      LOAN FACILITIES

4.      HSBC and the Debtor are parties to a Multiple Advance Term Loan Agreement dated December 17, 1999 ("1999 Loan Agreement").  A copy of the 1999 Loan Agreement is attached to the Declaration as Exhibit A.  In connection with the 1999 Loan Agreement, the Debtor executed an installment note dated December 17, 1999 in the principal amount of $1,200,000 (the "1999 Note").  A copy of the 1999 Note is attached to the Declaration as Exhibit B.

5.      The Debtor and the St. Lawrence County Industrial Development Agency ("Agency") executed a collateral mortgage dated January 7, 2000, which encumbers the Real Property ("2000 Mortgage") and secures all indebtedness of the Debtor to HSBC, including indebtedness under the 1999 Note, in the maximum principal amount of $1,200,000.  A copy of the 2000 Mortgage is attached to the Declaration as Exhibit C.

6.      The 2000 Mortgage was recorded in the Office of the Clerk of St. Lawrence County on January 7, 2000 as Instrument Number 2000-353.

7.      HSBC and the Debtor are also parties to a Term Loan Agreement dated December 4, 2001 ("2001 Loan Agreement").  A copy of the 2001 Loan Agreement is attached to the Declaration as Exhibit D.  In connection with the 2001 Loan Agreement, the Debtor executed a promissory note dated December 4, 2001 in the principal amount of $940,000 (the "2001 Note").  A copy of the 2001 Note is attached to the Declaration as Exhibit E.

8.      The Debtor and the Agency executed a mortgage and security agreement dated as of December 4, 2001, which encumbers the Real Property ("2001 Mortgage" and collectively with the 2000 Mortgage, the "Mortgages") and secures indebtedness of the Debtor to HSBC in the maximum principal amount of $940,000 under the 2001 Loan Agreement and the 2001 Note. A copy of the 2001 Mortgage is attached to the Declaration as Exhibit F.

9.      The 2001 Mortgage was recorded in the Office of the Clerk of St. Lawrence County on December 6, 2001 as Instrument Number 2001-21444.

10.      In addition, the Debtor executed security agreements dated May 7, 1999, March 2, 2001, and February 12, 2001 (collectively, the "Security Agreements"), whereby the Debtor granted to HSBC a security interest in all of the Debtor's personal property as collateral security for payment of all indebtedness of the Debtor to HSBC.  Copies of the Security Agreements are attached to the Declaration as Exhibit G.

11.      HSBC's security interest in the Debtor's personal property was properly perfected by the filing of two financing statements – Filing Nos. 20104996 and 20105092 – with the Delaware Secretary of State on December 10, 2001 (collectively, the "Financing Statements" and collectively with the 1999 Loan Agreement, the 1999 Note, the 2001 Loan Agreement, the 2001 Note, the Mortgages and the Security Agreements, the "Loan Documents").  Copies of the Financing Statements are attached to the Declaration as Exhibit H.

12.      Each of Fred D. Pollard, Clarence Gratto, Mahlon T. Clements and International Valley Development Corporation (collectively, the "Guarantors"), executed a guaranty in favor of HSBC, guarantying payment of with all indebtedness owned by the Debtor to HSBC.

B.      PREPETITION STATE COURT ACTION

13.      On December 12, 2005, HSBC commenced an action in New York State Supreme Court, St. Lawrence County ("State Court"), against the Debtor and the Guarantors to collect indebtedness owed by the Debtor under the Loan Documents.

14.     On October 10, 2006, the State Court entered judgment in favor of HSBC and against the Debtor and the Guarantors, which judgment was filed in the St. Lawrence County Clerk's Office on December 5, 2006.  The October 10, 2006 judgment was subsequently delivered to the Sheriff of St. Lawrence County Clerk's Office for execution and was returned unsatisfied.

15.     As a result, on April 12, 2010, HSBC commenced an action ("Foreclosure Action") in the State Court bearing Index No. 133425 against the Debtor, the Guarantors and others to foreclose the Mortgages.

16.     On November 21, 2011, the State Court entered a Judgment of Foreclosure and Sale in favor of HSBC in the Foreclosure Action in the principal amount of $1,966,602.29, plus $48,611.21 in attorneys fees and disbursements, plus referee fees up to $500, plus expenses, and plus interest from January 1, 2011 at the rate of nine percent (9%) per annum ("Judgment").  A copy of the Judgment is attached to the Declaration as Exhibit I.

C.     DEBTOR'S UNSUCCESSFUL EFFORTS TO SELL THE REAL PROPERTY

17.     Notwithstanding entry of the Judgment, HSBC continued to cooperate with the Debtor's efforts to arrange a consensual sale of HSBC's collateral, i.e., the Real Property and the Debtor's personal property located at the Real Property ("Personal Property" and collectively with the Real Property, the "Facility").

18.     In connection with the Debtor's efforts to sell the Facility, on April 27, 2012, the Debtor and HSBC entered into a Stipulation and Order, which was subsequently ordered by the State Court on May 9, 2012 ("Stipulation").  A copy of the Stipulation in attached to the Declaration as Exhibit J.

19.     Pursuant to the Stipulation, HSBC agreed to postpone noticing and advertising a foreclosure sale in the Foreclosure Action until June 15, 2012 in order to permit the Debtor an opportunity to complete a negotiated sale of the Facility.

20.     The Stipulation provided that, in the event that a negotiated sale of the Facility did not close by June 15, 2012 ("Stipulation Deadline"), the Debtor would surrender the Personal Property to HSBC to be sold pursuant to an Article 9 sale and HSBC would complete the foreclosure sale granted in the Judgment.

21.     The Debtor did not complete a negotiated sale of the Facility prior to the Stipulation Deadline.

22.     Thereafter, HSBC scheduled a foreclosure auction with respect to the Property and Article 9 auction/sale for August 21, 2012 ("Sale").

23.     By letter dated August 16, 2012 ("Adjournment Request"), the Debtor requested that HSBC adjourn the Sale scheduled for August 21, 2012 for a period of thirty days.

24.     The Debtor asserted in the Adjournment Request that an adjournment of the Sale was necessary because a negotiated sale to a potential buyer would not be able to close prior to the August 21, 2012 Sale date.

25.     HSBC rejected the Debtor's request to adjourn the Sale by letter to the Debtor from HSBC's counsel dated August 17, 2012.

D.     THE DEBTOR'S CHAPTER 11 PROCEEDING

26.     The Debtor commenced a Chapter 11 proceeding under Case No. 12-61549-6-dd ("Prior Case") on August 20, 2012 -- only days after HSBC's rejected the Debtor's request to postpone the Sale of the Property.

27.     In connection with its Chapter 11 petition, the Debtor filed an affidavit dated August 17, 2012 by Fred D. Pollard, the Debtor's president (Prior Case Docket No. 1) ("Pollard Affidavit").

28.     The Pollard Affidavit states that the Debtor commenced this Chapter 11 case "to allow time to complete" the sale contemplated by the Adjournment Request, which was necessary because HSBC's Sale was scheduled for August 21, 2012.

29.    The Pollard Affidavit further states that the Debtor does not have any employees and has not conducted any operations at the Facility since 2008.

30.    No motion for authority to sell the Property was ever filed by the Debtor in the eight months which the Prior Case was pending.

31.    On September 26, 2012, HSBC filed a motion ("Dismissal Motion") (Prior Case Docket No. 21) to, among other things, dismiss the Prior Case for cause pursuant to 11 U.S.C. § 1112(b) as having been filed in bad faith.

32.    On November 20, 2012, the Court entered an order ("Dismissal Order") (Prior Case Docket No. 31), granting the Dismissal Motion and dismissing the Prior Case pursuant to 11 U.S.C. § 1112(b) for all of the reasons set forth in the Dismissal Motion, which Dismissal Order was upheld after reargument.

E.    INDEBTEDNESS

33.    Subsequent to dismissal of the Prior Case, HSBC re-scheduled and re-noticed the Sale for May 16, 2013 ("New Sale Date").

34.    As of the New Sale Date, the Debtor is indebted to HSBC in the total amount of $2, ,672,125.26  under the Judgment, including post-judgment interest, costs, and expenses (the "Indebtedness").  A statement of the Indebtedness is attached to the Declaration as Exhibit K**.**

F.    PROPERTY VALUATION / ADDITIONAL LIENS

35.    In November 2009, HSBC obtained an appraisal from Charles R. Anderson, which concluded that the forced liquidation value of the Personal Property is $366,500.

36.    In addition, HSBC obtained an appraisal from Michael L. Varley, which concluded that the fair market value of the Real Property is $380,000.

37.    Furthermore, on or about April 15, 2013, the Debtor forwarded to HSBC an offer of a third party to take an assignment of HSBC's position under the Loan Documents and

Judgment in consideration of $1,500,000, which offer HSBC rejected by its terms.  A copy of the offer is attached to the Declaration as Exhibit L.

38.     During the period of May 7, 2013 through May 14, 2013, the Debtor has attempted twice by order to show cause in the State Court to stop the May 16, 2013 sale.  Both attempts were denied by the State Court.

39.     As a result, the current value of the Facility – i.e., all of HSBC's collateral -- is, at most, $746,500, as appraised and possibly $1,500,000 if the offer was legitimate.  In any event, there is no equity in the Facility.

## ARGUMENT

40.     By this Motion, HSBC seeks an order granting relief from the automatic stay on the ground that the Debtor lacks equity in the Property, and that the Debtor is unable to provide HSBC with adequate protection of HSBC's interests in the Property.

**A.     HSBC IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY BECAUSE THE DEBTOR LACKS EQUITY IN THE PROPERTY AND NO POSSIBILITY OF AN EFFECTIVE REORGANIZATION EXISTS, AND THE DEBTOR CANNOT PROVIDE ADEQUATE PROTECTION**

41.     Section 362(d) of Bankruptcy Code permits the automatic stay to be lifted under certain circumstances and provides, in part, that:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> >
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if—
> >
> > > (A) the debtor does not have an equity in such property; and
> > > (B) such property is not necessary to an effective reorganization

11 U.S.C. § 362 (d).

42.    HSBC seeks relief from the automatic stay so it can continue a foreclosure sale of

the Real Property, conduct a secured creditor's sale of the Personal Property and otherwise

enforce its rights pursuant to the Loan Documents, and any and all liens or other interests in the

Facility.

**I.    The Debtor Lacks Equity in the Facility**

43.    As noted above, according to appraisals obtained by HSBC, the aggregate value

of the Facility is, at most, $746,500, which is significantly less than the Indebtedness.

44.    Even assuming that the value of the Facility is $1,500,000 as set forth in the April

15, 2013 offer received by the Debtor, the value of the Facility does not exceed the Indebtedness.

45.    As a result, the Debtor lacks any equity in the Facility.

**II.    No Possibility for an Effective Reorganization Exists**

46.    In light of the Debtor's lack of equity in the Facility, HSBC is entitled to relief

from the automatic stay pursuant to Section 362(d)(2) of the Bankruptcy Code unless the Debtor

demonstrates that the Facility is "necessary to an effective reorganization."  *See* 11 U.S.C. §

362(g) (the party opposing a motion for relief from the automatic stay has the burden of proof on

all issues except the debtor's equity in the property at issue).

47.    As an initial matter, the involuntary petition was filed under Chapter 7 of the

Bankruptcy Code and, therefore, no reorganization of the Debtor is contemplated.

48.    In any event, the Facility is the Debtor's sole asset and therefore no reorganization

can occur without the Facility.  But "the mere fact that the property is indispensible to the

debtor's survival is insufficient" to deny relief under the Section 362(d)(2) of the Bankruptcy

Code.  *In re Albany Partners, Ltd.*, 749 F.2d 670, 673 fn 7 (11th Cir. 1984).

49.    Rather, in order to demonstrate that the Facility is necessary to an effective reorganization, the Debtor must establish that is has a "reasonable possibility of a successful reorganization within a reasonable time."  *United States Ass'n v. Timbers of Inwood Forest*, 484 U.S. 365, 376 (1987).

50.    "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization ***that is in prospect***."  *Id.* (emphasis in original).

51.    For all of the reasons set forth in the Dismissal Motion which this Court previously granted in the Dismissal Order, no indication exists that "an effective reorganization . . . is in prospect." *Timbers*, 484 U.S. at 376 (emphasis in original).  HSBC is, therefore, entitled to relief from the automatic stay pursuant to Section 362(d)(2) of the Bankruptcy Code.

### III.    The Debtor Cannot Provide Adequate Protection

52.    A debtor's failure to provide "adequate protection of an interest in property" of a secured creditor constitutes grounds for relief from the automatic stay.  *See* 11 U.S.C. § 362(d)(1).  A debtor bears the burden of proof to demonstrate that adequate protection has been provided.  *See* 11 U.S.C. § 362(g).

53.    The Debtor's inability to make post-petition debt service payments or adequate protection payments to HSBC alone constitutes cause for relief from the automatic stay, even if the value of the Facility is not declining.  *See Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 333 (Bankr. S.D.N.Y. 2001) ("Without quantifying the decline in value, the creditor can often establish its prima facie case by demonstrating that the debtor has completely failed, or substantially failed, to make post-petition payments").

54.     In light of the fact that the Debtor has not operated the Facility for at least three years and has no other apparent source of revenue, the Debtor lacks any ability to make post-petition payments on the Loan Documents or towards the Judgment, to pay real property taxes assessed against the Real Property, or to maintain insurance on the Facility; therefore, the Debtor cannot provide HSBC with adequate protection of its interest in the Facility.

55.     Accordingly, relief from the automatic stay for cause pursuant to Section 362(d)(1) of the Bankruptcy Code is warranted.

56.     Moreover, to the extent this Court chooses to grant stay relief in lieu of dismissal, HSBC is entitled to immediate relief from the automatic stay as it pertains to the Property and asserts that cause exists sufficient to waive the requirements of Bankruptcy Rule 4001(a)(3), therefore allowing an Order to be effective upon this Court's signature.

## NO PRIOR MOTION

57.     HSBC has not made any prior motion or application for the relief requested in this Motion in this case to this Court or to any other court, except the Dismissal Motion filed in the Prior Case, and expressly reserves its rights to seek such other relief as it deems appropriate.

## NOTICE

58.     Notice of the Motion has been given to the Debtor, counsel for the Petitioners, the Office of the United States Trustee, those persons requesting notice and the Bankruptcy Rule 1007(d) creditors identified by the Debtor.

WHEREFORE, HSBC respectfully requests that the Court enter an Order granting relief from the automatic stay pursuant to 11 U.S.C. § 362(d) nunc pro tunc to the filing of the involuntary petition permitting HSBC to exercise its rights and remedies as a secured creditor with respect to the Property owned by the Debtor, and granting such other and further relief as is appropriate.

Dated:  May 15, 2013

PHILLIPS LYTLE LLP


By ___/s/ Angela Z. Miller_____
      Angela Z. Miller
      Allan L. Hill
3400 HSBC Center
Buffalo, New York  14203-2887
Telephone No. (716) 847-8400

-and-

1400 First Federal Plaza
Rochester, New York 14614
Telephone No. (585) 238-2000

Attorneys for HSBC Bank USA, National Association


Doc #01-2665253.2